**2015 UT App 61**

# THE UTAH COURT OF APPEALS

EVOLOCITY, INC.,
Petitioner,
*v.*
DEPARTMENT OF WORKFORCE SERVICES
AND DEABRA C. COLBERT,
Respondents.

Opinion
No. 20130587-CA
Filed March 19, 2015

Original Proceeding in this Court

Vincent C. Rampton, Attorney for Petitioner

Kathleen Bounous, Attorney for Respondent
Department of Workforce Services

David J. Holdsworth, Attorney for Respondent
Deabra C. Colbert

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which SENIOR JUDGES RUSSELL W. BENCH and JUDITH M. BILLINGS
concurred.[1]

CHRISTIANSEN, Judge:

¶1      Evolocity, Inc. challenges the Department of Workforce
Services' determination that Deabra C. Colbert was an employee of
Evolocity rather than an independent contractor. We decline to
disturb the Department's decision.

---

1. The Honorable Russell W. Bench and the Honorable Judith M.
Billings, Senior Judges, sat by special assignment as authorized by
law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2    Evolocity provides website design and marketing services for healthcare providers.[2] Evolocity operates largely through a system of what it terms independent contractors, who perform the company's programming and website-marketing work. Colbert was approached by her neighbor—Evolocity's owner—who offered her a position as a "go between" or intermediary between Evolocity's clients and its website designers and website-marketing workers. Colbert was a teacher at the time and had no previous experience working with website services.

¶3    When Colbert began working for Evolocity, she signed a contract indicating that she was an independent contractor. She received training from Evolocity on the operation of its "Steel Jaws" software, which Evolocity's workers were required to use to communicate with and track the work performed for Evolocity's clients. After her training, Colbert worked from her own home office. Colbert used her own computer, but Evolocity provided access to the Steel Jaws software and other software Colbert needed. Colbert received payment from Evolocity in the form of a biweekly retainer, which was akin to a set salary. Colbert's payments from Evolocity did not vary based on the quantity or quality of work she performed unless she was penalized by Evolocity for poor work performance.

¶4    During the time she worked for Evolocity, Colbert never formed a business, though she did keep records of her business expenses for tax purposes. Colbert worked full-time for Evolocity and did not perform website marketing or other similar services for other clients during this time.

¶5    After a number of years, Colbert's working relationship with Evolocity came to an end. Colbert filed for unemployment benefits

---

2. In reviewing an agency's adjudicative decision, we view the facts in the light most favorable to the agency's findings. *See Swift Transp. v. Labor Comm'n*, 2014 UT App 104, ¶ 2 n.1, 326 P.3d 678.

with the Department. Evolocity challenged Colbert's entitlement to unemployment benefits, arguing that Colbert was an independent contractor, not an employee. An administrative law judge determined that, notwithstanding the form of Colbert's employment contract, she was Evolocity's employee. Evolocity appealed that decision to the Department's appeals board, which affirmed the administrative law judge's decision. Evolocity now seeks judicial review of the Department's final decision.

## ISSUES AND STANDARDS OF REVIEW

¶6      Evolocity first argues that the Department's determination that Colbert was not an independent contractor is unsupported by the evidence in the record. The determination whether a claimant is an independent contractor involves a fact-sensitive inquiry into the unique facts of a particular employment relationship. *See BMS Ltd. 1999, Inc. v. Department of Workforce Servs.*, 2014 UT App 111, ¶ 13, 327 P.3d 578. Because this inquiry "will differ in every case due to the individuality of fact patterns and the vagaries of various vocations," we grant deference to the Department in its weighing of the relevant factors to arrive at its ultimate decision. *Id.* And we will disturb that decision only if it is clearly erroneous or falls outside the scope of the afforded deference. *See Carbon County v. Workforce Appeals Bd.*, 2013 UT 41, ¶¶ 22–23, 308 P.3d 477; *see also In re adoption of Baby B.*, 2012 UT 35, ¶ 46, 308 P.3d 382 (explaining that a "fact-like" mixed finding is "entitled to deference and would be properly affirmed on appeal if not clearly erroneous"). "To establish clear error, the challenging party must show that a finding is not supported by legally sufficient evidence even when the evidence is viewed in a light most favorable to the finding." *State v. Cater*, 2014 UT App 207, ¶ 10, 336 P.3d 32. We do not reweigh the evidence or substitute our decision for that of the Department but instead will uphold its determinations if they are supported by the record evidence. *Cf. Migliaccio v. Labor Comm'n*, 2013 UT App 51, ¶ 7, 298 P.3d 676.

¶7      In addressing this issue, we review the Department's subsidiary legal conclusions for correctness and its underlying

factual findings for the support of substantial evidence. *Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997); *see Murray v. Labor Comm'n*, 2013 UT 38, ¶¶ 19, 21, 308 P.3d 461.

¶8      Evolocity also argues that the Department's interpretation of the regulations governing an independent-contractor determination rendered those regulations unconstitutionally vague and thereby violated Evolocity's right to due process. "Constitutional issues, including questions regarding due process, are questions of law . . . ." *Summerhaze Co. v. Federal Deposit Ins. Corp.*, 2014 UT 28, ¶ 8, 332 P.3d 908 (citation and internal quotation marks omitted). We therefore decide Evolocity's constitutional challenge as a matter of law. *Id.*[3]

ANALYSIS

I. The Department's Determination Is Supported by the Evidence and Entitled to Deference.

¶9      Evolocity first argues that the Department's determination that Colbert was an employee, rather than an independent contractor, is not supported by the record evidence. Under Utah's Employment Security Act, "[f]ormer employees are generally eligible for unemployment benefits while independent contractors are not." *BMS Ltd. 1999, Inc. v. Department of Workforce Servs.*, 2014 UT App 111, ¶ 6, 327 P.3d 578. For purposes of establishing entitlement to unemployment benefits, "Utah law presumes that a paid or contracted worker is an employee unless the putative employer can demonstrate that the worker (1) is independently established in work of the same nature and (2) has been free from control or direction over the means of performing the work." *Id.* (citing Utah Code Ann. § 35A-4-204(3) (LexisNexis 2011) and Utah Admin. Code R994-204-303). "Special scrutiny of the facts is

_____

3. Evolocity raised its constitutional claim before the Department, but the Department did not rule on it. We therefore address this argument for the first time on appeal.

required to assure that the form of a service relationship does not obscure its substance . . . ." Utah Admin. Code R994-204-303. If an employer fails to demonstrate either independent establishment or freedom from control, the worker is considered an employee and may be entitled to unemployment benefits. Utah Code Ann. § 35A-4-204(3). We first address the Department's determination that Colbert was not independently established in work of the same nature as she performed for Evolocity.

¶10    "An independent contractor is a worker who is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as the services performed." Utah Admin. Code R994-204-301(1). "[A]n independently established trade, occupation, profession, or business is created and exists apart from a relationship with a particular employer and does not depend on a relationship with any one employer for its continued existence." *Id.* R994-204-303(1)(a). In evaluating whether a claimant is independently established, the Utah Administrative Code sets forth seven factors to be used by the Department as "aids in the analysis of the facts of each case." *Id.* R994-204-303.[4] However, the regulations also recognize that "[t]he degree of importance of each factor varies depending on" the nature of the work performed and that "some factors do not apply to certain services and . . . should not be considered." *Id.*

¶11    Here, the Department determined that two of the factors—whether the claimant had a separate place of business and

---

4. In short, those factors direct the department to consider whether the claimant has a separate place of business, has "a substantial investment" in the tools required to perform the services, regularly performs services of the same nature for other customers, can realize a profit or risks a loss from the independent business activity, advertises in an effort to generate business, has obtained required or customary licenses, and maintains records or documents for business-tax purposes. Utah Admin. Code R994-204-303(1)(b).

maintained records for business-tax purposes—were established by the evidence. And the Department determined that a third factor—whether the claimant had obtained required or customary business licenses—was not applicable under these circumstances. Evolocity has not challenged these determinations, and we therefore consider Evolocity's challenges to the remaining four factors.[5]

A.      Tools and Equipment

¶12      Evolocity first argues that the Department erroneously determined that Colbert did not provide her own tools and equipment.[6] This factor asks whether the claimant "has a substantial investment in the tools, equipment, or facilities customarily required to perform the services." Utah Admin. Code R994-204-303(1)(b)(ii). Evolocity notes that "for the most part, Ms. Colbert used her own computer, used her own telephone service, used her own internet service, and used her own other related equipment." Evolocity concedes, however, that it had furnished some equipment and software to Colbert, most notably access to the company's Steel Jaws software, which Colbert was required to use to communicate with Evolocity's clients and track the work she

---

5. Evolocity does argue that the Department improperly weighed Colbert's use of a home office in considering whether Colbert was subject to Evolocity's "control and direction" under rule R994-204-303(2) of the Utah Administrative Code. However, because we do not reach the question of whether Colbert was subject to Evolocity's control and direction, we do not address this claim.

6. Evolocity incorrectly identifies this factor as one of those the Department found in Evolocity's favor. However, the Department's final order states that the tools and equipment factor "does not support a finding the Claimant was independently established." Nevertheless, because Evolocity has set forth the evidence and reasoning it believes demonstrate that Colbert provided her own tools and equipment, we address this argument as a challenge to the Department's determination.

had performed each day. The Department determined that Colbert's purchase of a computer, telephone service, and internet service did not constitute a "substantial investment" in the tools required to do her work, because those purchases were "typical household expenses," the costs of which were "quite low." The Department found, moreover, that these purchases did not constitute all of the tools Colbert needed for her job and that the balance of those tools—a headset, the Steel Jaws software, and other business software—were provided to her by Evolocity.

¶13   Evolocity has not demonstrated that the Department's determination on this point lacks evidentiary support when the evidence is viewed in a light most favorable to the Department's determination. Evolocity does not address the Department's determination that Colbert's purchase of a computer and telecommunications services are merely "household expenses." And Evolocity has not explained how the Department's determination is clearly erroneous in light of the evidence that Evolocity supplied the software necessary for Colbert to perform her work. Accordingly, we conclude that Evolocity has failed to demonstrate error in the Department's determination on this point.

B.     Other Clients

¶14   Evolocity next argues that the Department erred in determining that Colbert did not perform work for clients other than Evolocity. This factor asks whether the claimant "regularly performs services of the same nature for other customers or clients and is not required to work exclusively for one employer." Utah Admin. Code R994-204-303(1)(b)(iii). Evolocity first observes that Colbert worked part-time for the United States Census Bureau for three months. However, Evolocity has directed us to no record evidence that Colbert's work for the census bureau was "of the same nature" as the work she performed for Evolocity. *Id.* Accordingly, the fact that Colbert worked part-time for the census bureau does not undermine the Department's determination.

¶15   Evolocity also asserts that Colbert was free to work for other clients and argues that requiring an employer to demonstrate that

a claimant has actually worked for other clients is "an unreasonable requirement" that is "clearly outside the law." However, the plain language of the regulation asks not whether a claimant is free to perform work for other clients but whether the claimant "regularly performs" work for other clients. *Id.* Thus, the Department's determination is neither contrary to law nor contrary to the record evidence, and Evolocity has not demonstrated error on this point.

C.     Advertising

¶16     Evolocity also argues that the Department erred in determining that Colbert did not advertise her services to generate business. This factor is satisfied if the claimant "advertises services" by any method "clearly demonstrating an effort to generate business." Utah Admin. Code R994-204-303(1)(b)(v). Evolocity asserts that Colbert advertised through interpersonal "networking" by speaking to friends and neighbors about her work and inviting several of them to work for Evolocity. However, evidence that she solicited others to work for Evolocity does not demonstrate "an effort to generate business" of her own. *Id.* Evolocity has identified no evidence that Colbert advertised in any medium in an effort to generate business for herself.

¶17     Evolocity faults the Department for focusing on whether Colbert actually advertised rather than whether she could have advertised her services. However, again, the plain language of the rule dictates precisely the inquiry undertaken by the Department: whether the claimant "advertises services," not whether the claimant is free to advertise her services. *Id.* Thus, we see no error in the Department's determination on this factor.

D.     Profit or Loss

¶18     Last, Evolocity challenges the Department's determination that Colbert could not realize a profit or loss through her work for Evolocity. To prevail on this factor, an employer must demonstrate that the claimant "can realize a profit or risks a loss from expenses and debts incurred through an independently established business activity." Utah Admin. Code R994-204-303(1)(b)(iv). Evolocity

argues that the Department inappropriately considered whether Colbert was "invested" in Evolocity.

¶19　In making this argument, Evolocity attacks the analysis conducted by the administrative law judge in this matter, not the analysis conducted by the Department's appeals board. However, our review is limited to the final, operative order of the Department as rendered by its appeals board.[7] *See* Utah Code Ann. § 63G-4-403 (LexisNexis 2011). The appeals board did not consider whether Colbert was invested in Evolocity but instead determined that Colbert's "expenses incurred to provide services for [Evolocity] . . . were not substantial enough to feasibly exceed [her] set salary." Not only has Evolocity failed to articulate a challenge to the appeals board's determination, but the appeals board's reasoning is consistent with this court's decision in *Petro-Hunt, LLC v. Department of Workforce Services*, 2008 UT App 391, 197 P.3d 107. In *Petro-Hunt*, this court concluded that a claimant could not realize a profit or loss where her overhead was limited and "all the money she received was pure profit with no accompanying risk of loss." *Id.* ¶ 28. Colbert was paid a set salary every two weeks. She could not increase the amount she was paid by performing more work, and she was not exposed to any risk of loss through incurring debts or expenses in performing her work. Thus, we are not convinced that the Department erred in determining that Colbert could not realize a profit or loss through her work for Evolocity.

¶20　In sum, Evolocity has failed to demonstrate error in the Department's determinations on the factors relevant to a decision whether Colbert was independently established in work similar to that she performed for Evolocity. The ultimate inquiry for the Department was whether, in light of these factors, Evolocity had

---

7. Evolocity asserts that, because the appeals board adopted the administrative law judge's findings, this court must review those findings rather than those of the appeals board. However, the appeals board conducted its own analysis of each relevant factor. Accordingly, it is the reasoning of the appeals board that controls, and Evolocity must demonstrate error in that reasoning to prevail.

proved that Colbert was "regularly engaged" in a business "established independently of the alleged employer"—that is, one that Colbert "created and [that] exists apart from a relationship with [Evolocity] and does not depend on a relationship with [Evolocity] for its continued existence." *See* Utah Admin. Code R994-204-303(1)(a).

¶21      As the Department found, Colbert was a teacher before she was approached by Evolocity to perform work for them and had never before worked in website marketing. Evolocity did not "call upon persons who were already in that trade or business as one would when in need of a barber, physician, or plumber." *New Sleep, Inc. v. Department of Emp't Sec.*, 703 P.2d 289, 291 (Utah 1985). Evolocity trained Colbert to perform the work using software Evolocity provided. During her tenure with Evolocity, Colbert never performed website-marketing work for other clients. As Evolocity itself declares in discussing whether Colbert worked exclusively for Evolocity, "Ms. Colbert chose not to establish a separate business entity, despite having been shown how to do so on multiple occasions." (Emphasis omitted.)

¶22      Given the balance of the relevant factors and the record evidence, we cannot conclude that the Department clearly erred in determining that Colbert was not engaged in an independently established business. *See In re adoption of Baby B.*, 2012 UT 35, ¶ 46, 308 P.3d 382. Because Evolocity has not demonstrated that Colbert was independently established, we need not consider whether she was subject to Evolocity's direction and control. *See* Utah Code Ann. § 35A-4-204(3) (LexisNexis 2011); *BMS Ltd. 1999, Inc. v. Department of Workforce Servs.*, 2014 UT App 111, ¶ 6, 327 P.3d 578.

II. The Department's Decision Does Not Render the Governing Regulations Unconstitutionally Vague.

¶23      Finally, Evolocity argues that the Department's decision "applied governing legal standards in a vague, subjective, and unpredictable manner, in violation of void for vagueness restrictions imposed by the due process clause." "The void-for-vagueness doctrine requires that a statute or ordinance

define an 'offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Greenwood v. City of North Salt Lake*, 817 P.2d 816, 819 (Utah 1991) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).[8] Evolocity takes issue principally with a statement made by the administrative law judge summarizing the standard applied to an independent-contractor determination:

> A status determination requires an assessment or evaluation of the total employment situation. It is not simply a matter of adding up the number of factors indicating employment status and those that indicate independent contractor status. The entire employment relationship is reviewed, considering the factors, to discover whether the Claimant was more like an employee or more like an independent contractor.

Evolocity asserts that this "impressionistic approach" improperly treats the statutory and regulatory standards as "simply 'points to ponder' when an administrative law judge is faced with the question whether, in his/her personal estimation, a given claimant looks more like a contractor or more like an employee." Evolocity accordingly argues that this approach renders the governing law unconstitutionally vague.

¶24 We first conclude that the administrative law judge's explanation of the governing standard is consistent with the law.

---

8. We note that it is not entirely clear whether the void-for-vagueness doctrine applies to a statutory unemployment-insurance program such as the Employment Security Act. Generally, the doctrine is applied to penal statutes or legislative enactments that impose civil fines. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966). However, because Evolocity has not demonstrated that the regulations are impermissibly vague, we need not decide whether the doctrine is applicable here.

The Employment Security Act provides that independent-contractor status must be proven "to the satisfaction of the [Unemployment Insurance Division]" of the Department. Utah Code Ann. § 35A-4-204(3) (LexisNexis 2011). The act's implementing regulations provide the procedure to be followed by the Department in making such a determination, setting forth the factors discussed above but cautioning that they are only "aids in the analysis of the facts of each case." Utah Admin. Code R994-204-303. Most importantly, the regulations give the Department discretion to consider the "degree of importance of each factor" in a particular case and whether a given factor may apply at all. *Id.* Accordingly, the administrative law judge correctly observed that the Department is empowered to evaluate "the total employment situation," including the relevant factors, "to discover whether the Claimant was more like an employee or more like an independent contractor."[9]

¶25  Evolocity's concern is therefore properly with the statutory scheme and the implementing regulations, not with the Department's decision. However, Evolocity has not identified the statute or regulation it believes fails to "define an offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Greenwood*, 817 P.2d at 819 (citation and internal quotation marks omitted). And while Evolocity's argument could be read as a challenge to the Department's statutory

---

9. In its reply brief, Evolocity relies on this court's decision in *Tasters Ltd. v. Department of Employment Security* for the proposition that the legislature intended the independent-contractor factors to be a "precise framework to be meticulously followed," 863 P.2d 12, 27 (Utah Ct. App. 1993), and argues that the Department therefore lacks the discretion apparently afforded it by the statute and regulations. "It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 (citation and internal quotation marks omitted). Because Evolocity did not argue in its opening brief that the Department lacked the discretion or authority to apply the factors as it did, this argument is waived.

discretion to evaluate and weigh the factors under rule R994-204-303 of the Utah Administrative Code, Evolocity has not shown that the ultimate standard applied by the Department under rule R994-204-301—whether the claimant is "engaged in an independently established trade, occupation, profession, or business of the same nature as the services performed"—is so vague that "ordinary people" cannot understand what conduct falls within the reach of the provision. *See* Utah Admin. Code R994-204-301(1); *Greenwood*, 817 P.2d at 819. Evolocity has therefore failed to demonstrate that the law as applied by the Department is unconstitutionally vague.

CONCLUSION

¶26     The record evidence supports the Department's finding that Colbert was not engaged in an independently established business and was therefore not an independent contractor. Evolocity has failed to demonstrate that the Department's application of the law rendered it unconstitutionally vague. We therefore decline to disturb the Department's determination that Colbert was Evolocity's employee.

———————