2019 UT App 43

## THE UTAH COURT OF APPEALS

PANY ZAK,
Petitioner,

*v.*

DEPARTMENT OF WORKFORCE SERVICES AND
WORKFORCE APPEALS BOARD,
Respondents.

Opinion
No. 20171040-CA
Filed March 28, 2019

Original Proceeding in this Court

Pany Zak, Petitioner Pro Se

Nathan R. White, Attorney for Respondents

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and DIANA HAGEN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     While many hands make light work, they may also accrue
liability for contributions to the state's unemployment
compensation fund. The Department of Workforce Services
(Department) determined that Pany Zak's day spa workers were
employees and not independent contractors. Because the
workers were employees, the Department concluded that their
wages were subject to state unemployment compensation fund
contributions and the Workforce Appeals Board (Board)
affirmed. Zak petitions for judicial review. We decline to disturb
the Board's decision.

¶2     Zak operated a by-appointment-only day spa business
out of her home and offered a variety of spa-related services to
customers. While Zak provided most of the services herself, she

hired other workers and contacted them when more hands were needed. When Zak contacted the workers with an opportunity to perform services in her spa, the workers were free to reject the offer. But if the workers accepted, Zak expected them to render their services at her place of business and she would pay the workers a percentage of the sale or a commission.

¶3     Under this arrangement, the customers belonged to Zak and the workers were directed not to hand out their own business cards to the customers. Zak set the price of services, set the rate or amount of commissions to workers, collected payment from customers, and paid the workers. When customers called the day spa, Zak or her boyfriend who lived with her answered the call and scheduled the appointment. If a customer failed to show up for an appointment with a worker or was dissatisfied with the services provided by a worker, Zak did not pay that worker.

¶4     When providing a service, workers paid no "booth" fees and otherwise did not rent space in Zak's day spa. Rather, Zak provided a room and massage table to the workers at no cost, and made available, at a cost to the workers, some spa-related products. If a customer paid by credit card, Zak charged the workers a credit card processing fee.

¶5     Zak generally found workers by placing classified advertisements and soliciting resumes. She then had the workers sign an agreement in which they agreed to be "classified as Contract Labor." The agreement further stated that Zak's day spa "is not considered [the worker's] employer and will not be held responsible for any tax payments" related to the workers' employment. Zak issued the workers a 1099-MISC[1] form but did

---

1. A 1099-MISC, or miscellaneous income form, is an Internal Revenue Service tax form that reports, among other things,
(continued…)

not know what types of tax forms the workers filed with the Internal Revenue Service. Zak offered the workers no instruction or training on how to perform services and did not ask them to show her their own business licenses. Indeed, Zak allowed the workers to provide services in their own unique styles.

¶6    In 2016, the Department commenced an audit to determine whether Zak's workers should be classified as independent contractors or as Zak's employees. After an investigation, the auditor determined that Zak's workers were employees and, consequently, that the workers' wages were subject to state unemployment compensation fund contributions. Zak appealed the audit to the Department. Considering Zak's appeal, a hearing officer within the Department reviewed documents from the original investigation and consulted with Zak. The hearing officer weighed the circumstances surrounding Zak's relationship with the day spa workers against several factors used to aid in the determination of a worker's independent contractor status. The officer affirmed the auditor's determination that Zak's spa workers were employees and not independent contractors.

¶7    Zak appealed the Department's decision to an administrative law judge (the ALJ). The ALJ affirmed the Department's decision, determining that Zak was an employer and that Zak's day spa workers were employees. As a result, the ALJ determined that Zak's business was subject to unemployment contributions. The ALJ observed that Zak had the burden to establish that the workers were "independently

_____

(…continued)

earnings paid to an independent contractor or a person who is self-employed but has performed work for another. *See About Form 1099-MISC, Miscellaneous Income*, IRS, https://www.irs.gov/forms-pubs/about-form-1099-misc [https://perma.cc/TY2T-4437].

established in their own trade, occupation, profession, or business providing similar services as those provided to [Zak] at the same time the services were provided to [Zak]." *See Aura Spa & Boutique v. Department of Workforce Services*, 2017 UT App 152, ¶ 8, 402 P.3d 813; *see also* Utah Code Ann. § 35A-4-204(3) (LexisNexis Supp. 2018). Zak's evidence in support of this factor consisted of her own testimony that the workers told her they had their own places of business and business licenses. In addition, Zak offered two resumes from workers she had hired that indicated those workers were self-employed. The ALJ determined that this evidence was hearsay and thus was "insufficient to establish a finding of fact that [the workers] had their own businesses, had other clients, or had business licenses."

¶8     Zak then appealed the ALJ's decision to the Board. The Board adopted in full the factual findings of the ALJ and affirmed the ALJ's reasoning and conclusions of law. Zak seeks review of that decision in this court. Zak primarily argues that the Board erred when it concluded that the day spa workers were employees and not independent contractors with independently established businesses.[2]

---

2. We note that Zak asserts that the Board misinterpreted the language of Utah Administrative Code R944-204-303(1)(b) when it considered that provision's enumerated factors used to determine whether a worker is an independent contractor. However, Zak fails to "explain, with reasoned analysis supported by citations to legal authority and the record," why she should prevail on this argument on judicial review. *See* Utah R. App. P. 24(a)(8). She also suggests that the Board's decision is not supported by substantial evidence. In our review of the Board's decision, the Board affirmatively cited substantial and undisputed evidence supporting its weighing of all seven

(continued…)

¶9    The Employment Security Act generally makes "[s]ervices performed by an individual for wages or under any contract of hire" subject to contributions to the state unemployment compensation fund. Utah Code Ann. § 35A-4-204(3). Zak does not dispute that her relationship with the spa workers included payment of wages under a contract for hire. Consequently, the services of the workers are subject to the Employment Security Act "unless it is shown to the satisfaction of the [Unemployment Insurance Division] that" an exception for independent contractors applies. *See id.*; *see also Evolocity, Inc. v. Department of Workforce Services*, 2015 UT App 61, ¶ 9, 347 P.3d 406 (observing that "Utah law presumes that a paid or contracted worker is an employee unless the putative employer can demonstrate that the worker (1) is independently established in work of the same nature and (2) has been free from control or direction over the means of performing the work" (quotation simplified)). Accordingly, Zak bears the burden to rebut the presumption that the workers were employees. *See Aura*, 2017 UT App 152, ¶ 8.

¶10    "The determination whether a [worker] is an independent contractor involves a fact-sensitive inquiry into the unique facts of a particular employment relationship." *Evolocity*, 2015 UT App 61, ¶ 6. We accordingly grant deference to the Board "in its weighing of the relevant factors to arrive at its ultimate decision" and "we will disturb that decision only if it is clearly erroneous or falls outside the scope of the afforded deference." *Id.*

---

(…continued)

factors. Because neither of these arguments is adequately briefed, we do not consider them further. *See State v. Thomas*, 961 P.2d 299, 304 (Utah 1998) ("It is well established that a reviewing court will not address arguments that are not adequately briefed.").

¶11 The Board considered seven factors to aid in its determination that the workers were independent contractors. *See* Utah Admin. Code R944-204-303(1)(b). These factors

> require the reviewing entity to examine whether the worker has a separate place of business; has substantially invested in his or her own equipment; has independent clients; can realize a profit or loss; advertises his or her own services; has obtained the required and customary professional licenses; and maintains records that validate business expenses.

*Aura*, 2017 UT App 152, ¶ 8. The Board considered the evidence presented and, importantly, the lack of evidence supporting the conclusion that any of the workers were independent contractors under each of the seven factors.

¶12 Zak separately addresses each factor in her briefing but does not challenge any of the record evidence. Instead, she asks us to consider the same evidence presented in the administrative proceedings and reach a different conclusion—that the workers were more like independent contractors. However, "[w]e do not reweigh the evidence or substitute our decision for that of the Department but instead will uphold its determinations if they are supported by the record evidence." *Evolocity*, 2015 UT App 61, ¶ 6. Affirming the Department's decision, the Board adopted in full its factual determinations. Because Zak does not confront the record evidence supporting the Board's decision, we decline to address the majority of Zak's challenges.

¶13 With regard to the first factor—the worker's separate place of business—Zak argues that the Board improperly ignored some of her evidence when it labeled that evidence hearsay. In other words, she contends that the Board refused to consider legally competent evidence, an argument that implicates the residuum rule. *See Aura*, 2017 UT App 152, ¶ 11. "The residuum rule requires that an administrative board's

findings of fact be supported by a residuum of legal evidence competent in a court of law even if the board has received and considered evidence of a lesser quality." *Id.* (quotation simplified). Here the Board declined to base its findings of fact on hearsay evidence alone.

¶14    "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *InnoSys, Inc. v. Department of Workforce Services*, 2011 UT App 169, ¶ 9, 257 P.3d 489 (quoting Utah R. Evid. 801(c)). "While hearsay is clearly admissible in administrative proceedings, the ensuing findings of fact may not rely exclusively on *inadmissible* hearsay evidence." *Aura*, 2017 UT App 152, ¶ 11 (quotation simplified).

¶15    Zak testified that the workers told her in conversations that they had their own business licenses and places of business. She further testified that some of the workers had other jobs performing spa treatments and she submitted two resumes from workers identifying themselves as "self-employed" and showing that they maintained other employment. None of the workers testified at the administrative hearing and Zak offered no other evidence of the workers' separate businesses. Zak's testimony about what the workers told her and the workers' resumes are hearsay. It constituted statements of others made while not testifying and the statements were offered by Zak to prove the truth of those statements. Zak offered this evidence to establish that the workers had their own business licenses and independent places of business. Because Zak did not assert that an exception applied to this hearsay evidence, the Board correctly concluded that this evidence was hearsay.[3]

---

3. Hearsay may be "legally competent evidence, given the multitude of exceptions to the presumptive bar on the admission

(continued…)

¶16 The Board considered Zak's testimony as well as the resumes. The ALJ observed that Zak "provided hearsay evidence the workers had their own places of business[,] . . . had other clients[, and] . . . had business licenses." Likewise, the Board observed that the only evidence supporting the workers maintaining a separate place of business "is hearsay in the form of the workers' resumes and their alleged statements to [Zak]." Because this evidence was hearsay not subject to an exception, standing alone and without corroboration, it was not competent evidence sufficient to support a factual finding contrary to the facts found by the ALJ. The ALJ and the Board thus properly concluded that Zak's testimony and the two resumes could not support a finding that the workers had business licenses or their own places of business. *See id.*

¶17 Zak has not demonstrated that the Board clearly erred in its conclusion that the workers were employees of her day spa. Nor has she established that the Board exceeded the scope of its

---

(…continued)

of hearsay." *Aura Spa & Boutique v. Department of Workforce Services*, 2017 UT App 152, ¶ 12, 402 P.3d 813. Zak asserts only that the public records exception should apply. *See* Utah R. Evid. 803(8) (excepting from the general hearsay bar, "[a] record or statement of a public office" so long as certain conditions are met). She fails, however, to direct us to the portion of the record where this argument was presented either to the ALJ or the Board for resolution. Consequently, this argument is not preserved. Zak does not argue that any exception to preservation applies under the circumstances and we therefore decline to address this argument further. *See State v. Johnson*, 2017 UT 76, ¶ 27, 416 P.3d 443 (explaining that, when an issue is not preserved, "the party must argue that an exception to preservation applies" in order for the appellate court to address that issue).

afforded deference in determining the facts and weighing them in reaching its conclusion. "Further, because independent contractor status requires a showing of both independent establishment and freedom from direct control, the lack of the former obviates the need to discuss the latter." *Id.* ¶ 15; *see also* Utah Code Ann. § 35A-4-204(3)(a)–(b) (LexisNexis Supp. 2018). For these reasons, we decline to disturb the Board's decision.

———————